FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 JUL 16 P 6: 26

CLERK'S OFFICE
AT BALTIMORE

BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONALD CRUDUP | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-13-3479 |
| SGT. ENGLEHART, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment. ECF 16. Plaintiff has opposed the motion. ECF 18.[1] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' motion, construed as a motion for summary judgment, shall be granted and judgment shall be entered in their favor.

### Background

Plaintiff Donald Crudup ("Crudup") alleges that on July 23, 2013, he was assaulted by defendants Englehart and Schulte, who are officers employed at Maryland Correctional Institution in Hagerstown (MCIH), where Crudup was incarcerated.[2] Crudup asserts that after he was handcuffed by Englehart and escorted to a shower by Englehart and Schulte, he was pushed into the shower which was wet. He states he fell and sustained an injury to his left elbow, right hip, and lower back as a result of the fall. ECF 1. Crudup attaches a copy of the notice of inmate rule violation filed by Englehart charging Crudup with engaging in a disruptive act (Rule 100); use of intimidating, coercive, or threatening language (Rule 104); interfering or resisting

---

[1] In addition to the response in opposition, plaintiff has filed correspondence addressing the assertions made in defendants' dispositive motion which have also been considered in the context of this opinion. ECF 19, 22, 24, and 26.

[2] Crudup has since been transferred to Jessup Correctional Institution. *See* ECF 25.

the performance of staff duties (Rule 312); and disobeying an order (Rule 400). ECF 1 at p. 4.[3] The notice provides the following narrative of the events leading up the alleged assault on Crudup:

> On the date of July 23, 2013, I Sgt. Englehart was dismissing the Ramadan breakfast line from the main dining room. At the approx. time of 4:15 a.m. Inmate Crudup, Don 288574 cut through the lines and attempted to walk behind me. I instructed him to stop and not walk behind me. He stated I don't want to walk in front of you. I then instructed him to sit down while I dismissed the rest of the lines. I then approached Inmate Crudup to remind him of the rules. As I attempted to talk to him, he immediately interrupted me. I asked him to listen to me and he immediately yelled, No you listen to me. I then asked Inmate Crudup to place his hands on the wall so I could search him for contraband, for my safety. I searched him and again tried to speak to him, only to be interrupted again in an even louder tone of voice. I then observed several Ramadan inmates and food service stopped in the hall way watching the situation. At this time decided to place cuffs on inmate Crudup and remove him from the dining room. As I hands on escorted Crudup towards H-1 tier he swiftly pulled his arm from my hand. Officer Schulte CO II seen this and assisted me escorting inmate Crudup to the H-1 Shower. I asked him for his ID and handcuffs, he continued to yell loudly and not listen to me. I was unable to retrieve neither the cuffs nor his Id. I then reported the captains office and reported the situation. At approx. 4:20 a.m. I reported back to H-1 tier with Lt. Chamberlin.[4] Inmate Crudup stated that he had slipped in the shower. He stated to me, You want to play games, I can play games too. Lt. Chamberland (sic) handed me his Id and he was properly identified. Then Inmate Crudup told me, I used to work for the DOC. You are going to regret what you did to me.

ECF 1 at p. 4. After a hearing, Crudup was found guilty of violating rules 104, 312, and 400. *Id.* at p. 8. The hearing officer found that rule 100 (engaging in disruptive behavior) was not supported and noted that Crudup's statement that he used to work for the DOC and that Englehart would regret what he did to him was an intimidating statement. *Id.*

Defendants assert that when Englehart was escorting Crudup he pulled his arm away and remained quarrelsome throughout the escort. ECF 16 at Ex. 1. Englehart explains that Crudup

---

[3] Page number references ECF pagination.

[4] The correct spelling of the lieutenant's name is Chamberlain. ECF 16 at Ex. 3.

2

was taken to the shower area in an effort to deescalate the situation and because MCI-H no longer has holding cells to use for that purpose. *Id.* The shower was chosen as an isolated location where Crudup could be secured and allowed to calm down. *Id.*

Upon reaching the shower area, Englehart and Schulte placed Crudup inside the shower; they deny pushing him. ECF 16 at Ex. 1 and 2. Crudup continued yelling loudly and refused to allow his handcuffs to be removed or to give his identification card to Englehart. *Id.* Englehart and Schulte told the H-1 tier officer that Crudup was in the shower area, then left the area and reported the incident to the captain's office. *Id.* While Englehart and Schulte were in the captain's office, the H-1 tier officer called to report that Crudup was claiming he had slipped in the shower and injured himself. *Id.*

Lt. Chamberlain, Englehart, and two additional officers returned to the shower area where they found Crudup standing at the shower door requesting to go to the medical department. ECF 16 at Ex. 3. Chamberlain opened the shower door, retrieved Crudup's identification card, handed the card to Englehart, and put Crudup onto a stretcher. *Id.* at Ex. 1. Crudup was then transported to the second floor hospital via stretcher where he claimed he had been pushed into the shower. *Id.* at Ex. 3. Although Crudup maintained the shower floor was wet, Chamberlain states that he held the white t-shirt that Crudup had been wearing and noted it was dry to the touch with no noticeable marks on it. *Id.*

Crudup claimed he was experiencing pain in his right hip that he rated at an 8 out of 10. ECF 16 at Ex. 5, pp. 8 – 9. Nurse Nguimbus examined Crudup and noted no redness, bruising, swelling, or unsteady gait. She advised Crudup to bear weight as tolerated and gave him two Motrin (200 mg). In addition he was advised to decrease his activity level, avoid lifting heavy weights, and to follow up if the pain worsened. Crudup was then returned to his cell. *Id.*

Defendants provide medical records for Crudup which includes a significant history of lower back pain which precedes the July 23, 2013, incident. When Crudup was seen again by a physician's assistant on August 6, 2013, he stated that he had injured his back in a car accident five years ago, but that he had re-injured his back when he fell in the shower. *Id.* at Ex. 5, p. 13. In addition, Crudup reported right hip pain after he fell in the shower. *Id.* During a medical visit on September 26, 2013, Crudup noted that prior to his incarceration he fell from a height of 19 feet to the ground. *Id.* at 17. An x-ray established Crudup has L4-L5 disc disease with osteophyte.[5] *Id.* Crudup also reported he was receiving epidurals for his back at Union Memorial Hospital prior to his incarceration. *Id.*

On October 23, 2013, Crudup was re-evaluated for his back and right hip pain. ECF 16 at Ex. 5, p. 20. At that time, Crudup told medical staff that prior to coming to MCI-H he was using a cane. *Id.* An x-ray of his hips was ordered and an appointment was scheduled. *Id.* On November 8, 2013, Crudup's x-ray was read and he was diagnosed as having severe degenerative joint disease or osteoarthritis in his hips. *Id.* at p. 26. He was scheduled to be seen in the chronic care clinic in three months. *Id.*

An investigation into Crudup's claim he was assaulted was conducted by Detective Sergeant Mark Forest of the Department of Public Safety and Correctional Services Internal Investigation Unit (IIU). ECF 16 at Ex. 6, p. 3. Forest interviewed Crudup as part of the investigation. During his interview, Crudup stated that Englehart "got physical" with him in the dining hall during the contraband search. *Id.* at p. 4. Crudup claimed he was patted down twice and during the second search Englehart struck him in the groin with his fist;[6] when Crudup bent over from the blow, he claims Englehart began yelling "resist." *Id.* Crudup further claimed that

---

[5] An osteophyte is a pathological bony outgrowth. *See* http://www.merriam-webster.com/medlineplus/osteophyte.
[6] This alleged assault is not included in the claims raised in the complaint. ECF 1.

4

Schulte came over and observed what was happening, but did not intervene. *Id.* Crudup maintained that he was being taken to the showers to be assaulted and resisted being taken there due to that fear. *Id.* at p. 5. When they reached the shower, Crudup claims that Schulte was holding one of his arms and Englehart was holding the other, and the two of them then pushed Crudup into the open shower where he fell to the floor. *Id.* When Crudup fell to the floor he claims he began yelling loudly for help. *Id.* He further claimed that as a result of his fall he sustained injuries to his back, hips, and elbow. *Id.*

Forest also interviewed Englehart and Schulte after each waived their right to counsel. ECF 16 at Ex. 6, pp. 5 – 6. Englehart maintained he conducted a standard contraband search before handcuffing Crudup and that he used a custody hold of Crudup's arm while escorting him to the shower area. *Id.* at Ex. 1. Englehart denies having any other physical contact with Crudup. Schulte also denies contacting Crudup in any other manner than the standard custody hold of his arm while escorting him to the shower and assisting with his transport to the medical area. *Id.* at Ex. 2.

After completing his investigation, Forest made the following conclusions, which the Court summarizes:

> (1) Mr. Crudup did not sustain any injuries as a result of this incident;
>
> (2) Lieutenant Chamberlain did not witness this incident; however, advised that Mr. Crudup was not wearing wet clothing in the medical department during his evaluation and the floor of the H-1 shower was wet while Mr. Crudup was in there;
>
> (3) Officer Schulte denied shoving or pushing Mr. Crudup into the H-1 shower. He stated that he and Sergeant Englehart did place Mr. Crudup in the shower; however, Mr. Crudup never fell to the floor; and
>
> (4) Sergeant Englehart denied shoving or pushing Mr. Crudup into the H-1 shower making him fall to the floor. He stated that he did place

> Mr. Crudup in the shower; however, no one used force and Mr. Crudup was not assaulted by anyone.

ECF 16, Ex. 6 at pp. 7 – 8.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

6

## Exhaustion of Administrative Remedies

The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that Plaintiff is aggrieved by a single occurrence, as opposed to a general conditions-of-confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of Aavailable@ remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to

> address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Thus, Plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Defendants assert Crudup did not properly exhaust administrative remedies (ARP). Defendants cite three ARPs filed by Crudup concerning the July 23, 2013, incident that were either dismissed for procedural error with instructions to resubmit or dismissed because the remedy sought (institution of criminal charges) was unavailable. ECF 16 at Memorandum, pp. 9 - 11. Despite Crudup's inartful presentation of the issues raised in his ARPs, the allegation of excessive force, which is the issue pending before this court, was investigated by IIU. The

request for investigation was submitted the day of the incident and remained pending until February 4, 2014, when the actual investigation occurred, long after any deadline for filing an ARP about the force used had expired. *See* ECF 16 at Ex. 6, p. 7 ("On 2/4/14 . . . I interviewed Correctional Officer Sergeant Troy Englehart"). Crudup's other claims regarding access to the video of the dining hall, the propriety of the disciplinary proceeding, and institution of criminal charges are not matters properly before the court. This court is familiar with the Division of Correction's practice to decline an investigation for an ARP where one is already pending before the IIU. Thus, the court concludes that the exhaustion requirement regarding the alleged excessive use of force is satisfied where, as here, the administrative procedure is unavailable.

## Analysis

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkens v. Gaddy*, 599 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 34.

In his opposition response, plaintiff takes issue with several matters asserted by defendants. First, plaintiff states there is no rule prohibiting an inmate from walking behind a

correctional officer and he should not have been reprimanded for doing so. ECF 22 and 24. This dispute of fact is not material; whether there is a formal rule prohibiting walking behind an officer is immaterial to the fact that Crudup was ordered not to do so and became argumentative. To the extent an order given by a correctional officer does not require illegal conduct, there is no basis for refusing to comply without expecting to receive consequences for that refusal. Secondly, Crudup takes issue with the fact he was placed in a shower stall instead of a holding cell, which he claims was improper and indicates some nefarious intent on behalf of defendants. ECF 19 and 20. Defendants, however, addressed the reason why a shower was used in this instance; MCI-H no longer has holding cells for use when inmates are behaving in a recalcitrant manner. The mere choice of the shower, over some other area of the prison to secure Crudup, is not a material fact that impacts the issue of whether excessive force was used in this case.

Turning now to the undisputed facts, it is clear that the only force used in this case was that which was necessary to escort Crudup away from the dining hall and place him in an area of the prison where he no longer presented a threat to the safety of the institution. He does not deny he resisted the efforts of the correctional officers to take him from the dining hall to the shower. And he admits that he initially refused to enter the shower stall and resisted going into it by going down on his knees, but then says he stood up and he was pushed into the shower from behind. ECF 24 at p. 7. Even assuming Crudup was forcefully pushed into the shower, he does not deny being argumentative and refusing to comply with efforts to retrieve the handcuffs or his identification after having arrived at the shower. His boisterous behavior, together with his abject refusal to cooperate with lawful orders, was enough to justify the minimal force used to confine him in a restricted area while he calmed down. Also, the objective evidence does not support his assertion that he was ever on the shower floor. Defendants have provided a

statement under oath from Lt. Chamberlain who states Crudup's shirt was dry shortly after he claimed to have fallen onto the wet shower floor. ECF 16 at Ex. 3. Crudup has not refuted that evidence. His assertion that he sustained injury to his back, elbow, and hip from falling in the shower is also contradicted by the objective evidence. The examining nurse noted in Crudup's medical records shortly after the fall is alleged to have happened that she found no redness, bruising, swelling, or unsteady gait. Further, medical records submitted by defendants establish Crudup suffered a lower back injury five years or more prior to the July 23, 2013, incident and that his hip pain is attributable to osteoarthritis. *Id.* at Ex. 5. Crudup does not deny his back was injured prior to the incident, but maintains it was worsened by the fall in the shower. But his medical records provide no evidence of any deterioration to Crudup's back resulting from his alleged fall; in fact, they note his gait remained steady. Crudup offers no further evidence regarding the asserted injury.

This court is permitted to look to the extent of the injury resulting from an alleged excessive use of force as one factor to determine if the force used was reasonable under the circumstances. In the instant case there is no evidence of an injury. Beyond that, the evidence indicates the correctional officers' response to Crudup's refusal to obey their orders was appropriately measured. Accordingly, defendants are entitled to summary judgment in their favor.

A separate order follows.

July 16, 2014
Date

James K. Bredar
United States District Judge